MICHAEL RABKIN (ILRN 6293597)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
michael.rabkin@usdoj.gov
Telephone: (415) 934-5300

Attorney for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>KEITH SLIPPER,<br><br>　　　　　Defendant. | Case No. CR 12-00447 PJH<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1**<br><br>Date: December 15, 2017<br>Time: 9:00 a.m.<br>Court: Hon. Chief Judge Phyllis J. Hamilton |

　　　The United States respectfully requests that this Court sentence defendant Keith Slipper to (1) serve seven months of custody, based on the government's motion for a downward departure of 40% from the low end of the applicable Guidelines range for substantial assistance; (2) serve three years of supervised release; and (3) pay a criminal fine of $7,500, restitution in the amount of $58,669, and a $100 special assessment.  This sentence is consistent with the parties' Fed. R. Crim. P. 11(c)(1)(A) and (B) plea agreement.

## BACKGROUND

　　　Defendant Keith Slipper is a real-estate investor who participated in the bid-rigging conspiracies at the Contra Costa County and Alameda County foreclosure auctions from

approximately 2008 through 2010.  Plea Agreement (Dkt. 33), ¶ 2.  As a member of the conspiracies, Slipper reached agreements with competitors to refrain from bidding at the public auctions on selected properties and participated in the rounds.  Presentence Report ("PSR") ¶¶ 15-17.

Slipper attended trustee sales on an almost daily basis from 1987 through April 2010 and intermittently during the fall of 2010.  *Id.* ¶ 15.  He either used his own funds to buy property or partnered with other individuals.  *Id.*  At first, his business model was to purchase a property, refinance it to get cash to buy another property, rehabilitate it, and then rent it out.  *Id.*  But in approximately 2002, Slipper changed his business model to resell, rather than rent, each property.  *Id.*

Slipper participated in bid-rigging agreements on approximately 108 properties, of which he purchased approximately 26 properties.  The parties have agreed that the affected volume of commerce is $1,538,003.  *Id.* ¶ 17.  The plea agreement obligates defendant to pay $58,669 in restitution.  *Id.* ¶ 18.

Slipper was initially interviewed by the FBI on January 11, 2011.  *Id.* ¶¶ 12, 13.  During that interview, he stated that he had never participated in any rounds and had no knowledge of such activity.  *Id.* ¶ 14.  In June 2012, Slipper agreed to plead guilty and cooperate with the government.  Slipper met with the FBI again in August 2012 and admitted to his participation in rounds and payoffs.  Between October 2012 and May 2017, Slipper met with the FBI for seven additional interviews.

Defendant was charged by Information in June 2012 with two counts of bid rigging (15 U.S.C. § 1) and two counts of conspiracy to commit mail fraud (18 U.S.C. § 1349), and pleaded guilty to all four counts in June 2012.  Dkt. 1, 6, 7.  Those pleas were later withdrawn by stipulation, and in January 2017, defendant pleaded guilty before the Honorable Magistrate Judge Westmore to the bid-rigging counts only, pursuant to a revised plea agreement.  Dkt. 30, 31, 32, 33.  The Court adopted the Report and Recommendation accepting defendant's guilty

pleas and reserved ruling on whether it would accept the plea agreement, pending receipt of the presentence report.[1]  Dkt. 35.

## ARGUMENT

**A.    Sentencing Guidelines Calculations**

### 1.    Criminal History

In Paragraph 12 of the Plea Agreement, the parties agree that defendant's Criminal History Category is determined by the Court.  The PSR calculates defendant's Criminal History Category as I, based on the lack of any prior criminal history, and the United States agrees.  PSR ¶ 36.

### 2.    Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement.  *Id.* ¶ 31.  This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward adjustment of two levels for acceptance of responsibility.  U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§ 2R1.1(a)-(b), 3E1.1 (U.S. Sentencing Comm'n 2010).

Under the Sentencing Guidelines, an offense level of 13 for a defendant in Criminal History Category I results in a sentence ranging from 12 to 18 months (Zone C).

### 3.    Fine and Restitution

The PSR calculates a fine range of $20,000 to $76,900, consistent with the plea agreement.  PSR ¶ 68; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000).  In Paragraph 9 of the plea agreement, the government agrees to recommend a fine between $7,500 and $75,000.  (This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement.)

---

[1]  Because the plea agreement is consistent with the Guidelines calculations contained in the PSR, the government will make a motion for the Court to accept the plea agreement and dismiss the fraud counts (Counts Two and Four of the Information) at the sentencing hearing.

As for restitution, while the Mandatory Victim Restitution Act, 18 U.S.C. § 3663, does not apply to this case, restitution is permitted under 18 U.S.C. § 3583(d) (restitution as discretionary condition of supervised release).  In Paragraph 11 of the plea agreement, the parties agreed to recommend that the Court order defendant to pay restitution in the amount of $58,669.

**B.     Basis for Downward Departure for Substantial Assistance**

The government moves, pursuant to Section 5K1.1 of the Guidelines, for a downward departure for substantial assistance to the investigation under the Rule 11(c)(1)(B) plea agreement in this case.  The government recommends a 40% reduction from the low end of the Guidelines range of twelve months, resulting in a sentence of approximately seven months.

This recommendation is based primarily on the timing of defendant's decision to plead guilty, its likely influence on others to plead guilty, and the fact that he was prepared to provide trial testimony in *United States v. Michael Marr, et al.*, No. CR 14-00580 PJH.  After the investigation went public in 2011, defendant was among the earliest to agree to plead guilty and cooperate in the government's investigation, and thus likely influenced many other of his coconspirators to plead guilty as well.  After he was initially interviewed by the FBI in January 2011, defendant sat for eight interviews with the government, during which he described rounds and payoffs that he had participated in.  During these interviews, Slipper provided new information to the government regarding the Marr organization, including details of meetings that Slipper had with Michael Marr to reconcile what they owed each other for multiple rounds, as well as statements that Marr made regarding the extensive round records that Marr kept in order to ensure that he was paid for each round.  Slipper was noticed as a government witness for the *United States v. Michael Marr, et al.* trial and interviewed by the government in preparation for that testimony.  Ultimately, however, Slipper was not called as a witness.  Based on the foregoing, a 40% reduction for substantial assistance is appropriate.

**C.     Sentencing Recommendation**

The government's recommendation of a seven-month sentence is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553.  Defendant's sentence should reflect the seriousness of the offense, promote respect for the law, and afford

U.S.' SENT'G MEMO.
No. CR 12-00447 PJH

4

adequate deterrence to future bid-rigging offenses and white-collar crime generally, as the government has argued in the related cases.

Defendant profited directly from the more than 100 rigged auctions that he participated in, both by receiving nearly $60,000 in payoffs and by being able to buy over $1.5 million worth of properties at discounted prices through suppressed bidding at the public auctions. Given the magnitude of the financial harm caused by defendant's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines.

The government recognizes, however, that defendant has expressed remorse for his role in the offense, chose to cooperate with the government's investigation, is a first-time offender, and has agreed to pay restitution. While the government is recommending custody here, as it has in all the related cases, these factors have led this Court to impose probationary sentences for similarly-situated defendants.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court sentence defendant Keith Slipper to (1) serve a seven-month custodial sentence; (2) serve three years of supervised release; and (3) pay a criminal fine of $7,500, restitution in the amount of $58,669, and a $100 special assessment.

Dated: December 8, 2017                                   Respectfully submitted,

                                                          /s/ MICHAEL RABKIN
                                                          United States Department of Justice
                                                          Antitrust Division